UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

VICKI RICHARDS,

        Plaintiff,

-vs-                                                Case No.  5:04-cv-484-Oc-10GRJ

PIETRO BONO and CATERINA BONO,

        Defendants.
_____/

## **O R D E R**

The Plaintiff, Vicki Richards, claims that her landlord, Pietro Bono, violated her rights under the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, by subjecting her to severe and pervasive sexual harassment and *quid pro quo* sexual demands. She seeks declaratory and injunctive relief and money damages against Mr. Bono and his wife, Caterina Bono, who is a co-owner of the rental property. The case is before the Court on the Defendants' motion to dismiss (Doc. 6). Upon due consideration, the Defendants' motion is due to be denied.

## **Background and Facts**

The following facts are alleged in the complaint (Doc.1) and are taken as true for the purposes of ruling on the motion to dismiss. In January of 2003, the Plaintiff and her husband rented a home in Beverly Hills, Florida from the Defendants. The Plaintiff's home was one of several properties jointly-owned by the Defendants. In addition to being a co-owner, Mr. Bono acted as property manager and maintenance supervisor for the property.

Shortly after the Plaintiff moved into the home, Mr. Bono began a pattern of sexual harassment directed at the Plaintiff. The harassment lasted over fifteen months and ended in late April of 2004, after the Plaintiff caused felony charges to be filed against Mr. Bono.

Mr. Bono began to appear near the property soon after the Plaintiff moved in. Initially, he whistled and made sexually suggestive remarks toward the Plaintiff, asking her if she "messed around on her husband." His conduct quickly escalated from unsolicited sexual remarks to physical attacks on the Plaintiff in her home. In April of 2003, Mr. Bono used his key to enter the Plaintiff's home unannounced. He then grabbed the Plaintiff's arm, pulled her towards him, tried to kiss her, and asked for the Plaintiff to touch his genitals. In August, Mr. Bono entered the Plaintiff's house again and demanded oral sex. When the Plaintiff refused, he exposed his genitals and ejaculated.

Mr. Bono threatened to evict the Plaintiff or physically harm her if she complained to Mrs. Bono about these incidents. Even though Mr. Bono tried to keep his behavior secret, Mrs. Bono knew or had reason to know of Mr. Bono's harassment of the Plaintiff and other female tenants. Mrs. Bono took no action to put a stop to her husband's behavior.

The harassment continued into 2004. In January, Mr. Bono physically assaulted the Plaintiff by pushing her against a wall, kissing her, and touching and trying to bite her breasts. In February, Mr. Bono entered the Plaintiff's home under the guise of making repairs and exposed himself in front of the Plaintiff. In April, Mr. Bono again used his key to enter the Plaintiff's home unannounced and uninvited and proceeded to physically attack

the Plaintiff by kissing her and touching her breasts. When the Plaintiff struggled to get away, she was knocked to the ground. Mr. Bono then stood over her and fingered her underpants while making lewd remarks. The Plaintiff reported the attack to law enforcement, and Mr. Bono was charged with a third-degree felony. Subsequently, the Defendants increased the Plaintiff's rent by $200.00 per month.

The Plaintiff claims that the Defendants violated 42 U.S.C. §§ 3604(b) & (c) and 3617 by unlawfully discriminating against her on the basis of her sex in the rental of her dwelling. The Defendants move to dismiss the Plaintiff's claims, arguing that (1) § 3604 does not reach discriminatory conduct occurring after the initial rental of a dwelling, (2) sexual harassment is not a recognized form of discrimination under § 3617, (3) if sexual harassment is cognizable under § 3617, the Plaintiff has failed to state a claim, and (4) the Plaintiff has not alleged a basis for holding Mrs. Bono liable under the Fair Housing Act. For the reasons that follow, the Defendant's motion is due to be denied.

## **Motion to Dismiss Standard**

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from the facts in the light most favorable to the plaintiff.[1] In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."[2]  As the

---

[1] See, e.g., Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[2] Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).

Supreme Court declared in Conley v. Gibson, a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[3] Thus, if a complaint "shows that the Plaintiff is entitled to any relief that the Court can grant, regardless of whether it asks for the proper relief," it is sufficiently plead.[4]

"[T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low."[5] Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."[6] Liberal notice pleading standards embodied in Rule 8(a) "do not require that a plaintiff specifically plead every element of a cause of action"[7] or set out in precise detail the specific facts upon which she bases her claim.[8] The complaint must only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."[9]

---

[3] Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  See also Cook & Nichol, Inc. v. Plimsoll Club, 451 F.2d 505 (5th Cir. 1971).

[4] Dotschay v. Nat. Mut. Ins. Co., 246 F.2d 221 (5th Cir. 1957).

[5] Quality Foods de Centro Am. S.A. v. Latin Am. Agribusiness Develop. Corp., 711 F.2d 989, 995 (11th Cir. 1983).

[6] Fed. R. Civ. P. 8(a)(2).

[7] Roe v. Aware Woman Ctr for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).

[8] Conley, 355 U.S. at 47.

[9] Roe, 253 F.3d at 683 (quoting *In re* Plywood Antitrust Litig., 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

## **Discussion**

### *A. Post-Acquisition Sexual Harassment under Section 3604(b)*

The Plaintiff claims that Mr. Bono's actions violated 42 U.S.C. § 3604(b), which makes it unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex.

While the Defendants briefly posit that § 3604(b) does not supply an action for sexual harassment, the bulk of their motion is devoted to a different argument. Instead of contesting the viability of sexual harassment actions under § 3604(b) in general, the Defendants attempt to narrowly circumscribe the availability of that section as a vehicle for sexual harassment claims. They argue that § 3604(b) only prohibits discrimination in the *acquisition* of a dwelling and does not prohibit discrimination occurring after the property has been acquired. According to the Defendants, the Plaintiff cannot state a claim under § 3604(b) because the alleged sexual harassment occurred after the Plaintiff executed the rental agreement. Therefore, the issue is not whether § 3604(b) contemplates a claim of sexual harassment; sexual harassment claims under the Fair Housing Act have been recognized by every court considering the issue, including the Tenth and Seventh Circuits.[10] The question is whether a sexual harassment claim under § 3604(b) may be

---

[10] Krueger v. Cuomo, 115 F.3d 487 (7th Cir. 1997); DiCenso v. Cisneros, 96 F.3d 1004 (7th Cir. 1996) (recognizing sexual harassment under the FHA and citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57 (1986)); Honce v. Vigil, 1 F.3d 1085 (10th Cir. 1993) (recognizing both quid pro quo and hostile environment sexual discrimination under § 3604(b) and citing Meritor); United States v. Koch, 352 F. Supp. 2d 970 (D. Neb. 2004) (sexual harassment recognized under § 3604
(continued...)

based on conduct occurring after the property has been initially rented. The Eleventh Circuit has not spoken on this issue, but the Court concludes that the question should be resolved in the affirmative, in favor of the Plaintiff.

There are several cases of recent vintage which hold that § 3604(b) only prohibits discrimination adversely affecting the availability of housing.[11] Most of these cases, however, deal with the claims of a homeowner, not a renter.[12] Because of this, the courts in these cases were concerned with whether there was unlawful discrimination in the "sale" of a dwelling or in "the provision of services and facilities in connection" with the sale of a dwelling. They were not concerned with discrimination in a rental arrangement.[13]

---

[10](...continued)
and § 3617); Reeves v. Carrollsburg Condo. Unit Owners Ass'n, No. CIV. A. 96-2495RMU, 1997 WL 1877201 (D.D.C. Dec. 18, 1997); Williams v. Poretsky Mgmt, Inc., 955 F. Supp. 490 (D. Md. 1996) (same); Beliveau v. Caras, 873 F. Supp. 1393 (C.D. Cal. 1995) (sexual harassment under § 3604(b)); New York ex rel. Abrams v. Merlino, 694 F. Supp. 1101 (S.D.N.Y. 1988); Grieger v. Sheets, 689 F. Supp. 835 (N.D. Ill. 1988) (sexual harassment by landlord actionable under § 3604(b) and § 3617); Shellhammer v. Lewallen, Fair Housing-Fair Lending Rptr. (P-H) ¶ 15,472 (W.D. Ohio 1983), aff'd, 770 F.2d 167 (6th Cir. 1985) (unpublished decision). In general courts have relied on three grounds in finding that sexual harassment is actionable under the Fair Housing Act: (1) both Title VII and Title VIII share the same purpose - to end bias and prejudice; (2) sexual harassment is a form of sexual discrimination; and (3) other courts have so held. See Williams, 955 F. Supp. at 495.

[11] Halprin v. The Prairie Single Family Homes of Dearborn Park Ass'n, 388 F.3d 327 (7th Cir. 2004); King v. Metcalf 56 Homes Ass'n, Inc., No. 04-2192-JWL, 2004 WL 2538379 (D. Kan. Nov. 8, 2004); Farrar v. Eldibany, No. 04 C 3371, 2004 WL 2392242 (N.D. Ill. Oct. 15, 2004); Lawrence v. Courtyards at Deerwood Ass'n, Inc., 318 F. Supp. 2d 1133 (S.D. Fla. 2004); Cox v. The City of Dallas, No. Civ. A. 398CV1763BH, 2004 WL 370242 (N.D. Tex. Feb. 24, 2004); Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc., 276 F. Supp. 2d 1222 (M.D. Fla. 2003).

[12] Halprin, 388 F.3d 327; Lawrence, 318 F. Supp. 2d 1133; Cox, 2004 WL 370242; Gourlay, 276 F. Supp. 2d 1222.

[13] Most of these decisions also involve interpretation of § 3604(a), which makes it unlawful
(continued...)

This Court finds the distinction between sale and rental to be crucial. A sale of real property is a singular event, something concluded at a determinable point in time. So, it is easy to see how courts faced with the § 3604 claims of homeowners for post-sale discriminatory conduct could conclude that discrimination after the sale of the dwelling was not discrimination in the sale of the dwelling and therefore not within the purview of § 3604(b). But this reasoning does not extend to cases of post-acquisition discrimination in a rental context. The ultimate question in such cases is whether discrimination has affected the "terms, condition, or privileges" of the *rental* of a dwelling or whether discrimination has occurred in the provision of services or facilities "in connection with" the *rental* of a dwelling. Unlike a sale, a rental arrangement involves an ongoing relationship between the landlord and tenant in which the landlord typically retains various powers, such as the right to increase rent or evict a tenant, and concomitant obligations, such as the duty to make repairs or provide other services and facilities. These powers and obligations exist over the duration of the rental. Because the plain meaning of "rental" contemplates an ongoing relationship, the use of that term in § 3604(b) means that the statute prohibits

---

[13](...continued)
"[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make available or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." The plaintiffs in these cases argued that the phrase "otherwise make available" prohibited post-sale discrimination affecting enjoyment of their property. The courts rejected this argument, reasoning that "otherwise make available" referred to the initial acquisition of the property. See Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1542 (11th Cir. 1994) ("[I]n order to state a claim under § 3604(a), the plaintiffs must allege unequal treatment . . . that affects the availability of housing."). The Plaintiff does not attempt to state a claim under § 3604(a).

discrimination at any time during the landlord/tenant relationship, including after the tenant takes possession of the property.[14]

To hold that § 3604(b) does not reach post-acquisition discrimination in the rental context would be inconsistent with the spirit of the Fair Housing Act, contrary to the Act's "broad and inclusive" language, and at odds with a "generous construction" of its provisions.[15] It would be anomalous to say, for example, that a landlord is prohibited from refusing to rent a dwelling on the basis of sex (or any other protected classification), but would not be prohibited from raising the rent mid-tenancy because of the sex of the tenant. Further, the Court is not persuaded that a statute which prohibits discrimination in the "provision of services and facilities in connection" with the rental of a dwelling would not reach a landlord's discriminatory provision of repair services after the initial rental.[16] Such a construction is contrary to the Department of Housing and Urban Development's (HUD's) regulation interpreting § 3604(b). 24 C.F.R. § 100.65(b) states that actions prohibited under

---

[14] "Rental" is not a defined term in the Act.

[15] Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 211-12 (1972).

[16] This would be so, even if one considered the phrase "in connection therewith" to refer to "rental" rather than "dwelling." Some courts have taken the narrow interpretation of this phrase when considering whether post-sale discrimination is actionable, holding that "in connection therewith" refers to "sale or rental" . Cox, 2004 WL 370242, at * 7; Laramore v. Illinois Sports Facilities Auth., 722 F. Supp. 443, 452 (N.D. Ill. 2002); Gourlay, 276 F. Supp. 2d at 1232. By construing the phrase to refer to the "sale" of a dwelling, rather than the dwelling itself, these courts concluded that post-sale discrimination in the provision of services or facilities was not actionable. In the rental context, narrow or broad construction of the phrase makes no difference because "rental" connotes ongoing provision of services. See Gourlay, 276 F. Supp. 2d at 1232 n. 20 (distinguishing between sale and rental and suggesting in dictum that § 3604(b) would be available to remedy post-acquisition discrimination in the rental context).

§ 3604(b) include: "[f]ailing or delaying maintenance or repairs of sale or rental dwellings because of . . . sex" and " and "[d]enying or limiting services or facilities in connection with the sale or rental of a dwelling, because a person failed or refused to provide sexual favors." This regulation plainly contemplates making post-acquisition discrimination, including sexual harassment, actionable. The Court concludes that the regulation is entitled to deference because it is based on a reasonable interpretation of the statute and is not contrary to the clear intent of Congress.[17]

In short, the Court rejects the narrow construction of § 3604(b) and holds that sexual harassment is actionable under § 3604(b) in the context of a rental arrangement even where the harassing conduct occurred after the initial rental of the property. The statute prohibits sex-based discrimination in the rental of a dwelling, including discrimination occasioned during the term of the rental. The Court is persuaded that the plain language of § 3604(b) should be read, consistent with the HUD regulations, as prohibiting unlawful discriminatory conduct after a tenant has taken possession of the dwelling. This holding is also supported, at least implicitly, by several of the decisions recognizing the viability of a sexual harassment claim under the Act.[18]

---

[17] Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).

[18] Krueger v. Cuomo, 115 F.3d 487 (7th Cir. 1997); DiCenso v. Cisneros, 96 F.3d 1004 (7th Cir. 1996) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57 (1986)); Honce v. Vigil, 1 F.3d 1085 (10th Cir. 1993) (citing Meritor); United States v. Koch, 352 F. Supp. 2d 970 (D. Neb. 2004); Reeves v. Carrollsburg Condo. Unit Owners Ass'n, 1997 WL 1877201 (D.D.C. Dec. 18, 1997); Williams v. Poretsky Mgmt., Inc., 955 F. Supp. 490 (D. Md. 1996); Beliveau v. Caras, 873 F. Supp. 1393 (C.D. Cal. 1995); Grieger v. Sheets, 689 F. Supp. 835 (N.D. Ill. 1988); Shellhammer v. Lewallen, Fair Housing-Fair Lending Rptr. (P-H) ¶ 15,472 (W.D. Ohio 1983), *aff'd,* 770 F.2d 167 (6th Cir. 1985) (unpublished decision).

The Defendants have not cited authority to persuade the court to adopt their position. Only two of the cases cited by the Defendants involved a homeowner's claim of post-acquisition discrimination. In Farrar v. Eldibany,[19] a tenant sued her landlord, and others, under, *inter alia*, § 3604(b) for failing to provide heat and hot water to her apartment because of her race. Without discussing the distinctions between § 3604(a) and § 3604(b),[20] the court dismissed her claim, holding that the "Seventh Circuit has interpreted § 3604 to prohibit discrimination in services related to the acquisition of housing, not the maintenance of housing."[21] The court cited a district court's decision and a Seventh Circuit decision, both concerning a homeowner's claim for discrimination. But, the Farrar court did not explain why these holdings should apply in the rental context.[22] As an alternative basis, the court also concluded that the claim should be dismissed because the pleadings showed that the lack of heat and hot water was due to a boiler replacement, which affected all tenants regardless of race. Accordingly, Farrar is distinguishable and unpersuasive.

---

[19] 2004 WL 2392242 (N.D. Ill. Oct. 15, 2004).

[20] See supra note 14.

[21] Farrar, 2004 WL 2392242 at * 4.

[22] The Farrar court cited the district court's decision in Halprin v. The Prairie Single Family Homes of Dearborn Park Ass'n, 208 F. Supp. 2d 896 (N.D. Ill. 2002) which was affirmed in 388 F.3d 327 (7th Cir. 2004). Halprin involved a homeowner's claim of religious discrimination. Curiously, the district court's decision in Halprin cited Southend Neighborhood Improvement Ass'n, 743 F.2d 1207, 1210 (7th Cir. 1984), which did not hold that § 3604(b) applied only to pre-acquisition discrimination.

In King v. Metcalf 56 Homes Association, Inc.,[23] an African-American tenant sued her neighborhood homeowners' association for post-acquisition racial harassment occasioned by her neighbors, one of whom was the president of the association. The homeowners' association was not the plaintiff's landlord. Relying on Farrar and decisions involving suits by homeowners, but without explanation as to why these decisions should be extended to rentals, the court dismissed the claim on the basis that the plaintiff did not allege any discrimination in the initial rental of her house. The Court is not persuaded by the unarticulated reasoning in King.

One of the cases most heavily relied upon by the Defendants actually contains dictum supporting the Plaintiff. In Gourlay v. Forest Lake Estates Civic Association of Port Richey, Inc.,[24] the plaintiff, a homeowner, sued his homeowners' association under §§ 3604(a)-(c) and 3617 for housing discrimination based on familial relationship. The plaintiff claimed that the homeowners' association took certain actions that denied him and his wife the enjoyment of their home because they were foster parents to numerous children. The court granted summary judgment in favor of the defendant after concluding that in the context of a suit by a homeowner, § 3604 only prohibits discrimination affecting the availability of housing, i.e., the sale of the house. The court, however, expressly limited its holding to suits by homeowners, and suggested in dictum that its holding would be different

---

[23] 2004 WL 2538379 (D. Kan. Nov. 8, 2004).

[24] 276 F. Supp. 2d 1222 (M.D. Fla. 2003).

if the plaintiff had been renting his home.[25] In so doing, the court recognized the obvious distinction between purchasers and renters: "the rental of a dwelling would need to be renewed[,] and a landlord and tenant have an ongoing relationship that a purchaser and a seller do not have."[26] This distinction, according to the Gourlay court, "would make activities by a landlord or others actionable after the rental of a dwelling."[27] Therefore, Gourlay supports, albeit in dictum, the position that post-acquisition discrimination is actionable under § 3604(b) in the rental context.

Having concluded that the Plaintiff's claim for post-acquisition sexual harassment is actionable under § 3604(b), the Court will consider whether the Plaintiff has properly alleged such a claim. In defining the contours of an action under the Fair Housing Act it is appropriate to look to Title VII standards.[28] Section 3604(b) of Title VIII makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of . . . rental. . . . because of . . . sex." Similarly, Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his . . . terms [or] conditions of employment, because

---

[25] Id. at 1231 n.11 & 1233 n. 20. The court also suggested a different outcome had the defendant tried to evict the plaintiff. Id. at 1232 n. 17.

[26] Id. at 1231 n.11. The court was referring to actions under § 3604(a), but found this reasoning equally applicable to § 3604(b). Id. at 1233 n.20 ("In connection with a rental, the plain meaning of Section 3604(b) would likely extend past the initial rental of a dwelling in a similar fashion to Section 3604(a).").

[27] Id. at 1231 n.11.

[28] DiCenso, 96 F.3d at 1008 (applying Title VII standards to hostile housing environment claim under the FHA); Honce, 1 F.3d at 1089-90 (same).

of . . . sex."[29] In Title VII cases, when an employer takes an adverse employment action, such as termination or a decrease in pay, for refusing to submit to the employer's sexual demands, the employee's "terms and conditions" of employment are said to be unlawfully conditioned upon compliance with the employer's demands. In such a case, the employer is liable for sexual discrimination of the tangible action, or *quid pro quo*, type.[30] An employer is also liable under Title VII in the absence of a tangible action if he or she creates a sexually hostile work environment, characterized by severe and pervasive sexually offensive behavior which alters the "terms and conditions" of employment.[31] The Court concludes, consistent with the purpose and language of the Fair Housing Act, that where the terms and conditions of a rental, including continued occupation, rent, and the provision of repairs, are conditioned upon compliance with the sexual demands of a landlord, then sexual activity has become part of the terms and conditions of the rental, and the landlord is liable for sex discrimination under § 3604(b).[32] Similarly, where the landlord subjects his tenant to sexually hostile behavior of sufficient severity and pervasiveness to alter the terms and conditions of the rental arrangement, the landlord is also liable under § 3604(b) for sex discrimination in housing.[33]

---

[29] 42 U.S.C. § 2000e-2(a)(1).

[30] Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

[31] Frederick v. Sprint/ United Mgmt Co., 246 F.3d 1305, 1311 (11th Cir. 2001).

[32] Honce v. Vigil, 1 F.3d 1085, 1089 (10th Cir. 1993) ("'Quid pro quo' harassment occurs when housing benefits are explicitly or implicitly conditioned on sexual favors.").

[33] Id. at 1090 (applying Title VII standards to Title VIII and holding that in the housing (continued...)

The Plaintiff has properly alleged facts stating a claim under § 3604(b) for sexual harassment of both the tangible action (*quid pro quo*) and no-tangible action (hostile environment) types described above. The complaint contains allegations inferring that when it became clear that the Plaintiff was not going to acquiesce to his sexual demands, Mr. Bono raised her rent. Further, the allegations in the complaint are more than sufficient to set forth a claim for severe and pervasive sexually hostile conduct. On various or multiple occasions, Mr. Bono exposed himself, demanded sex, ejaculated in front of her, grabbed her buttocks and breasts, kissed her, pushed her against the wall, knocked her to the ground, and fingered her underpants. This behavior is all the more egregious in that it was committed in the Plaintiff's own home.[34] Furthermore, Mr. Bono threatened to evict the Plaintiff and do physical harm to her if she complained.[35] Accordingly, for the foregoing

---

[33](...continued)
context, "a claim is actionable when the offensive behavior unreasonably interferes with use and enjoyment of the premises").

[34]  It has been suggested that sexual harassment in the home may be even more oppressive than in the workplace.

> When sexual harassment occurs at work, at that moment or at the end of the work day, the woman may remove herself from the offensive environment. She will choose whether to resign from her position based on economic and personal considerations. In contrast, when the harassment occurs in a woman's home, it is a complete invasion in her life. Ideally, home is the haven from the troubles of the day. When home is not a safe place, a woman may feel distressed and, often, immobile.

Beliveau, 873 F. Supp. at 1397 n. 1 (quoting Regina Cahan, Comment, *Home is No Haven: An Analysis of Sexual Harassment in Housing*, 1987 Wis. L. Rev. 1061, 1073 (1987)).

[35] Threats which are not carried out may be considered in a hostile environment suit. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 754 (1998).

reasons, the Court concludes that the Plaintiff has stated a claim for sexual harassment under § 3604(b).

### *B. Sexual Harassment Under Section 3617*

The Plaintiff also claims that the Defendants have violated § 3617, which makes it unlawful:

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

This claim is predicated on the same set of allegations as the claim under § 3604(b). The Defendants do not argue that it should be dismissed as redundant. Nor do they argue that the statute does not reach post-acquisition discrimination.[36] Instead, the Defendants contend that this claim should be dismissed because the Eleventh Circuit has not held that sexual harassment falls within the statute's purview and because to recognize such a claim would be unwarranted federal interference into housing disputes. Neither contention supplies a legal basis for dismissing this claim.

Section 3617 makes it unlawful to "coerce, intimidate, threaten, or interfere with any person" in three circumstances: (1) in the exercise or enjoyment of any right protected by §§ 3603-06; (2) on account of the person's having exercised or enjoyed such a right; and

---

[36] There is ample support for the position that § 3617 reaches post-acquisition conduct. See, e.g., Gourlay, 276 F. Supp. 2d at 1235 (holding that "Section 3617 regulates discriminatory conduct before, during, or after a sale of a dwelling."). Therefore, even if the Court were to conclude that post-acquisition sexual discrimination is not actionable under § 3604(b), it would nevertheless find such a claim actionable under § 3617. See United States v. Hoch, 352 F. Supp. 2d 970, 978-79 (D. Neb. 2004).

(3) on account of his having aided or encouraged any other person in the exercise or enjoyment of such right.[37] From the first circumstance one can see that § 3617 overlaps with other provisions of the Act, including § 3604(b). The Plaintiff's sexual harassment claim is therefore actionable under § 3617 as unlawful interference with the exercise of her right granted and protected by § 3604(b) to enjoy her rental property free from sexual discrimination.[38]

Furthermore, assuming that the Plaintiff's sexual harassment claim under § 3604(b) is not actionable because that section does not reach post-acquisition discrimination, the Court concludes that § 3617 would nevertheless supply an independent basis for the claim under the second circumstance to which it applies. Sex discrimination occurring after the initial possession of rental property may constitute unlawful intimidation, coercion, or interference on account of having exercised the right to obtain housing.[39]

Moreover, the Court's treatment of § 3617 is consistent with the applicable HUD regulation. Section 100.400(c)(2) states in relevant part that conduct made unlawful by §

---

[37] See Stackhouse v. DeSitter, 620 F. Supp. 208, 210-11 (N.D. Ill. 1985).

[38] Honce, 1 F.3d at 1090 (holding that in the housing context, a sexual harassment claim "is actionable when the offensive behavior unreasonably interferes with the use and enjoyment of the premises."). See Campbell v. City of Berwyn, 815 F. Supp. 1138, 1144 (N.D. Ill. 1993) (stating claim under § 3617 for violation of § 3604(b)).

[39] Hoch, 352 F. Supp. 2d at 979 n.8 ("For example, if a woman rents an apartment - ostensibly pursuant to the same lease terms that are provided to all other tenants - it seems to me that she has exercised her right to obtain a dwelling without discrimination on account of her sex. This right is protected by section 3604, although there has been no violation of this right. If, however, after she has taken possession of the property, she is then subjected to discriminatory acts based upon her sex, it seems to me that she should be allowed to prove that she experienced interference - if not threats, intimidation, or coercion - on account of her having exercised or enjoyed her right of access to housing by section 3604.").

3617 includes "[t]hreatening, intimidating or interfering with persons *in their enjoyment of a dwelling* because of . . . sex."[40] This regulation is based on a permissible construction of § 3617 and is not contrary to the clear intent of Congress. It is therefore entitled to deference.[41] Surely, severe and pervasive sexual harassment of a tenant by a landlord in the tenant's own home is interference with the tenant's enjoyment of her dwelling because of sex.

Finally, Mr. Bono threatened the Plaintiff with physical violence and eviction if she complained about his behavior, and the Defendants raised the Plaintiff's rent after she caused a criminal complaint to be filed. The Court concludes that this is sufficient to state a claim under § 3617 that the Defendants intimidated, threatened, and interfered with the Plaintiff on account of her having taken action opposing unlawful housing discrimination. Accordingly, the Plaintiff's claim under § 3617 will not be dismissed.[42]

---

[40] 24 C.F.R. § 100.400(c)(2)

[41] The Court agrees with the Chevron deference analysis conducted by the court in Hoch, 352 F. Supp. 2d at 979-80.

[42] The Defendants argue that if sexual harassment is actionable under § 3617, the Plaintiff has nevertheless failed to state a claim because the allegations in the complaint are not so severe and pervasive as to have the effect of causing her to abandon the exercise of her housing rights. This, however, is not the standard. The Court sees no reason why sexual harassment in the housing context has to be more severe than in the employment context to be cognizable. Under Title VII, it is not necessary that harassment rise to the level of a constructive discharge to be actionable. As stated above, the allegations of Mr. Bono's conduct are sufficient to state a claim for hostile housing environment. Nothing more is required. See Halprin v. The Praire Single Family Homes of Dearborn Park Ass'n, 228 F.3d 327, 330 (7th Cir. 2004) (rejecting argument for a heightened threshold for actionable conduct under § 3617); Krueger v. Cuomo, 115 F.3d at 490-91.

The Defendants also argue that Mrs. Bono cannot be held liable for her failure to act absent allegations that Mr. Bono's conduct was severe enough to be considered threatening or violent. They rely on Lawrence v. Courtyards at Deerwood Ass'n, Inc., 318 F. Supp. 2d 1133, 1144 (S.D.
(continued...)

### *C. Section 3604(c)*

The Plaintiff also claims that the Defendants have violated 42 U.S.C. § 3604(c), which makes it unlawful:

> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . sex . . ., or an intention to make any such preference, limitation, or discrimination.

The Defendants argue that the phrase "with respect to the sale or rental of a dwelling" means that Congress did not intend the statute to supply an action based on conduct after the acquisition of the property. The Court rejects this argument for reasons stated above. The complaint alleges that Mr. Bono told the Plaintiff that she would be evicted if she did not keep quiet about his sexually hostile behavior. This is sufficient to allege that Mr. Bono orally expressed that submission to his sexual advances was a condition of continued occupancy.[43]

### *D. Mrs. Bono's Liability*

The Fair Housing Act holds principals or employers liable for the discriminatory acts of their agents or employees under traditional vicarious liability rules.[44] The complaint alleges that Mrs. Bono was co-owner of the property with her husband, the alleged

---

[42](...continued)
Fla. 2004), for support. Lawrence is inapposite because it did not deal with the discriminatory acts of a co-owner or agent, but with the acts of a neighbor. Even so, the complaint contains sufficient allegations of violence and threats by Mr. Bono.

[43] See 24 C.F.R. § 100.75(b) ("The prohibitions in this section shall apply to all written or oral notices or statements by a person engaged in the sale or rental of a dwelling.").

[44] Meyer v. Holley, 537 U.S. 280, 285-86 (2003).

perpetrator of unlawful sexual harassment. It is consistent with the spirit of the Fair Housing Act to hold all owners of property responsible for ensuring compliance with its provisions.[45] An owner of property cannot avoid compliance with the Act by delegating the duty not to discriminate.[46] Several courts have held that both spouses are liable when one spouse engages in discriminatory conduct while renting jointly owned property.[47] Mr. Bono was the property manager and maintenance supervisor and acted as agent in this capacity to Mrs. Bono. Several of the acts of sexual harassment were facilitated by Mr. Bono's capacity and owner, property manager, and maintenance supervisor, i.e., he used his key to enter the Plaintiff's residence, sometimes under the guise of making repairs. He also threatened to exercise his power to evict the Plaintiff. As such, his capacity as owner and as Mrs. Bono's agent aided in the perpetration of his unlawful conduct.[48]

Furthermore, the complaint contains allegations that Mrs. Bono may be liable directly. According to the complaint, Mrs. Bono knew or should have known of Mr. Bono's conduct towards the Plaintiff and other female tenants but failed to take any action to stop

---

[45] United States v. Reece, 457 F. Supp. 43, 46 n.7 (D.C. Mont. 1978).

[46] Walker v. Crigler, 976 F.2d 900 (4th Cir. 1992); Green v. Century 21, 740 F.2d 460 (6th Cir. 1984).

[47] Hamilton v. Svatik, 779 F. 2d 383, 388 (7th Cir. 1985); Coates v. Bechtel, 811 F. 2d 1045, 1051 (7th Cir. 1987); United States v. Branella, 972 F. Supp. 294, 303 (D.N.J. 1997); Cato v. Jilek, 779 F. Supp. 937, 946 n.21 (N.D. Ill. 1991); Izard v. Arndt, 483 F. Supp. 261, 263-64 (D.C. Wis. 1980); Reece, 457 F. Supp. at 46 n.7.

[48] See Faragher v. City of Boca Raton, 524 U.S. 775 (1998) (recognizing in the Title VII context that "aided-by-agency" theory may supply a basis for vicarious liability). The Court has found no cases applying Faragher to a Title VIII action for sexual harassment.

it.[49] The complaint also alleges that both Defendants raised the Plaintiff's rent in retaliation for the Plaintiff having involved the police.[50] Accordingly, the Court concludes that there is no reason at present to dismiss Mrs. Bono as a defendant.

## Conclusion

Upon due consideration and for the forgoing reasons, it is ordered that the Defendants' motion to dismiss (Doc. 6) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 26th day of April, 2005.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:  Counsel of Record
            Maurya McSheehy

---

[49] Williams v. Poretsky Mgmt, Inc., 955 F. Supp. 490, 496-97 (D. Md. 1996) (holding landlord may be liable for sexual harassment perpetrated by employee where landlord knew or should have known of the harassment but failed to remedy it).

[50] Indeed, if this were an incident of *quid pro quo* sexual harassment, then Mrs. Bono may be held liable even if she did not personally increase the rent. The action would be within the scope of Mr. Bono's activities as her agent.